# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

       Plaintiff,            :       Case Nos. 1:92-cr-015; 1:97-cv-609;
                                         1:05-cv-207

                                      District Judge Herman J. Weber
      -vs-                           Chief Magistrate Judge Michael R. Merz
                         :

CHRISTOPHER L. SOLOMON[1],

       Defendant.

---

## REPORT AND RECOMMENDATIONS

---

     This case is before the Court for decision on the merits of Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 34).

## Procedural History

     In February, 1992, Defendant-Petitioner Christopher L. Solomon was indicted by a federal grand jury, along with Anthony Powell, on one count of possessing in excess of fifty grams of cocaine base with the intent of distributing it, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2 (Indictment, Doc. No. 1).  Mr. Solomon was convicted after trial to a jury and sentenced to 240 months confinement, the sentence which he is now serving.

     Solomon, represented by new counsel, appealed to the Sixth Circuit raising two issues: "(1)

---

[1]The Court of Appeals notes that Defendant's name is occasionally spelled "Soloman" in the papers.  At the evidentiary hearing on April 1, 2008, Defendant confirmed in person that "Solomon" is the correct spelling.

whether the jury's finding of defendant-appellant's guilt in this case should be upheld by the reviewing court when there was no substantial evidence produced indicative of his culpability and (2) whether the trial court committed prejudicial error in failing to grant defendant-appellant a reasonable continuance in order to obtain new counsel." (Quoted, Doc. No. 36 at 7.) The Court of Appeals affirmed in a decision which reads in its entirety:

> This cause having come on to be heard upon the record, the briefs and the oral argument of the parties and upon due consideration thereof,
> The court finds that no prejudicial error intervened in the judgment and proceedings in the district court, and it is therefore ORDERED that said judgment be and it hereby is affirmed.

*United States v. Solomon*, Case No. 92-3892 (6th Cir. May 5, 1993)(unpublished).

Petitioner filed the instant § 2255 Motion on June 26, 1997 (Doc. No. 34).  In it he raised the following claims:

Ground A: Ineffective assistance of counsel, failure to investigate

Ground B: Ineffective assistance of counsel, conflict of interest.

Ground C: Ineffective assistance of counsel, failure to properly advise during plea negotiation.

Ground D: Ineffectiveness of appeal counsel.

Ground E: Violation of due process for prosecutorial misconduct - failure to move for a mistrial.

Ground F: Trial court abused its discretion in failing to grant a reasonable continuance.

Ground G: Court's abuse of discretion in not declaring mistrial.

Ground H: Petitioner had standing to have his indictment dismiss [sic] for the Government illegal seizure of a third party's residence during his investigation.

(Doc. No. 34, Attachment at 1-20.)

On March 2, 1999, Judge Weber referred the case to the undersigned for report and recommendations on the original Motion to Vacate (Doc. No. 46).  On March 15, 1999, the undersigned recommended that the Motion be denied as untimely filed under the Antiterrorism and

Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). After considering Defendant's Objections (Doc. No. 49), Judge Weber adopted the Report and Recommendations and denied the Motion to Vacate on April 13, 1999 (Doc. No. 50). Final determination was postponed, however, by Defendant's filing of numerous post-judgment motions and memoranda (Doc. Nos. 51, 53, 60, 63, 64, 71, and 77).

Defendant appealed several times to the Sixth Circuit Court of Appeals, to wit, on April 19, 2004 (Doc. No. 83; 6th Cir. Case No. 04-3650), June 9, 2004 (Doc. No. 88; 6th Cir. Case No. 04-3870), August 11, 2004 (Doc. No. 93), October 24, 2005 (Doc. No. 108; 6th Cir. Case No. 04-3650), November 9, 2005 (Doc. No. 112; 6th Cir. Case No. 05-4609); and November 15, 2005 (Doc. No. 115; 6th Cir. Case No. 05-4611).

While other matters were pending, Defendant filed on March 31, 2005, a second Motion to Vacate under § 2255 (Doc. No. 96; assigned Civil Case No. 1:05-cv-207). On September 30, 2005, Judge Weber transferred that Motion to the Court of Appeals as a second or successive § 2255 motion which requires prior permission from the Court of Appeals for filing (Doc. No. 104).

On November 22, 2005, the Court of Appeals construed the appeal in Case 04-3870 as a request for certificate of appealability and denied it (Doc. No. 116).

On November 2, 2006, in Case No. 04-3650, the Sixth Circuit concluded Petitioner was entitled to equitable tolling of the statute of limitations, reversing this Court's conclusion that his original § 2255 Motion was time barred and remanding for a decision "on the merits of Petitioner's Section 2255 motion." *Solomon v. United States*, 467 F.3d 928, 929 (6th Cir. 2006)(copy at Doc. No. 117).

On January 25, 2007, the Court of Appeals construed Defendant's Notice of Appeal in Case No. 05-4611 as an application for certificate of appealability and found it was moot because the original § 2255 Motion had been remanded for further consideration (Doc. No. 119). On January

29, 2007, in Case No. 05-4237 arising from the transfer of the March 31, 2005, Motion to Vacate, the Court of Appeals denied leave to file a second § 2255 motion and transferred the matter back to this Court in light of the remand of the original § 2255 motion (Doc. No. 120 at 2).  Because there was "no final judgment in the original § 2255 action," the Court held "Solomon may move to amend his original § 2255 motion with the claims he now proposes.  The district court may find that the amended claims are untimely or that a motion to amend is unavailing on other grounds.  However, these determinations should be made in the first instance by the district court."  *Id.*

On January 31, 2007, Judge Weber again referred the case to the undersigned (Doc. No. 121).  After the Court of Appeals Mandate issued on March 22, 2007, Mr. Solomon filed a "Motion to Amend, Consolidate Actions, Issues and/or Factual Basis (Doc. No. 123).  Therein he sought to incorporate the issues raised in his second § 2255 Motion (Doc. No. 96) and the following new grounds for relief:

> 1. Movant was constructively denied counsel during critical stages at trial, thus, presumption of prejudice applies;
>
> 2. Trial court erred in failing to conduct, *sua sponte*, [inquiry] into client/counsel irreconcilable conflict of interest, structural error, presumption of prejudice applies;
>
> 3. Trial court erred in failing to conduct hearing *sua sponte* to ensure movant made knowing and voluntary waiver of counsel, prior to premitting [sic] movant to proceed *pro se* during critical stages of trial, structural error, presumption of prejudice applies;
>
> 4. Amended factual basis to affidavit which is attached to memorandum in support of § 2255 Motion (Civil C-1-05-207)(doc. No. 101);
>
> 5. Cumulative trial errors, and totality of circumstances, rose to level of prejudice to movant.

(Doc. No. 123 at 2-3.)  Because all of these claims had been filed very substantially after the one-year statute of limitations ran and because the Court of Appeals' equitable tolling decision applied only

to the original § 2255 Motion, this Court on April 4, 2007, ordered that Defendant file one document not later than May 1, 2007, setting forth:

> 1. Each separate ground for relief he wishes this Court to consider adding to his original Petition;
>
> 2. Whether each such ground for relief is (1) a completely new ground, or (2) a new ground which shares a "common core of operative facts" with one of the original grounds, or (3) the same as ground as one of the original grounds.
>
> 3. For any completely new ground, the basis on which Petitioner asserts that such ground for relief is not barred by the statute of limitations.

(Order, Doc. No. 124, at 4.) The Order also required Defendant to advise if he intended to proceed *pro se* and which, if any, issues he intended to present at an evidentiary hearing. Defendant did not comply with that Order. On June 13, 2007, he filed a Motion to Amend (Doc. No. 127) which was denied on June 13, 2007 (Doc. No. 129). Defendant was granted an extension of time to August 13, 2007, to appeal this decision (Doc. No.132). In his Objections (Doc. No. 138), Defendant merely states that he did not receive the original orders in a timely fashion and asks for more time to respond. However, the Court had already acknowledged Defendant's lack of receipt of the June 13, 2007, Order and had given him until August 13, 2007, to file his objections. On August 10, 2007, he filed a response (Doc. No. 136, captioned "Motion in Response to Court Orders to Show Cause") to the April 4, 2007, Order which the Magistrate Judge will now treat as a motion for reconsideration of the denial of Motion to Amend and address on the merits below.

In the meantime, Defendant had advised the Court that he wished to proceed *pro se* in this matter because of his distrust of attorneys unless the Court could appoint the same counsel who represented him in the Court of Appeals (Doc. No. 136 at 18)[2]. He agreed, however, to accept

---

[2]Upon inquiry from the Court, counsel who had represented Mr. Solomon on appeal to the Sixth Circuit declined further appointment in the case.

assignment of a legal advisor from the Federal Public Defender's Office and such an advisor was appointed for him on August 10, 2007 (Doc. No. 137).

Because Defendant asserts ineffective assistance of his trial counsel, the Court set an evidentiary hearing and allowed the subpoena of trial counsel R. Michael McEvilley. However, on October 29, 2007, the Court denied issuance of subpoenas for District Judge Weber, court reporter Julie Wolfer, Assistant United States Attorney William Hunt, and Otto Gooden (Doc. No. 148). On December 13, 2007, the Court again denied a subpoena for Judge Weber and a request for a court-appointed expert (Doc. No. 153). On December 18, 2007, the Court again denied subpoenas for Mr. Hunt and Ms. Wolfer, but allowed a subpoena for Mr. Gooden (Doc. No. 155). On February 8, 2008, the Court again denied issuance of a subpoena for Judge Weber (Doc. No. 166). Finally, on March 14, 2008, the Court again advised Defendant that it had denied the subpoenas for Judge Weber, Ms. Wolfer, and Mr. Hunt (Doc. No. 172).

The case came on for evidentiary hearing on April 1, 2008. Messrs. R. Michael McEllivey and Otto Gooden were subpoenaed at Defendant's request and testified; Defendant also testified in his own behalf. Those proceedings have been transcribed and filed (Doc. No. 174). During the course of the hearing, the Court ascertained from Mr. Hunt, who appeared on behalf of the United States, that he had no recollection of the sidebar conference as to which Mr. Solomon had intended to call him.

**Motions to Amend**

In his Response to Court Orders to Show Cause (Doc. No. 136), Mr. Solomon requests his original § 2255 Motion be amended to include the following claims[3]:

1. Violation of Defendant's Sixth Amendment right to counsel due to conflict of interest.

2. Trial court committed reversible error in finding Petitioner lacked standing to challenge the government's uses of the third party's residence to perform sting operation under the due process clause for outrageous government conduct.

3. Ineffective assistance of counsel during pretrial plea negotiation.

4. Ineffective assistance of counsel in failing to properly develop and adequately present an entrapment defense during trial.

5. Petitioner's Sixth Amendment right [to] effective assistance of counsel and Fifth Amendment right to a fair trial was [sic] violated when trial court failed to declare a mistrial *sua sponte* when it reasonably knew petitioner was receiving ineffective assistance of counsel during trial.

6. Violation of petitioner's right to effective assistance of counsel and a fair trial, due to prosecutorial misconduct, for failure to move court for a mistrial on its own initiative, when the government reasonably knew that petitioner was receiving ineffective assistance of counsel during trial.

7. Petitioner was denied his due process right to be present at each stage of his criminal proceeding, when he was excluded from side-bar conference.

8. Petitioner was constructively denied counsel during motion for witness.

9. Petitioner's due process right to perfect an appeal was violated due to omissions in trial record, in violation of 28 U.S.C. § 753(b) and Fed. R. Crim. P. 12(f).

---

[3]All claims beyond those in the original § 2255 Motion are numbered in order in this Report without regard to their numbering in the various filings by Defendant and will be referred to by that number throughout the Report. The original claims are designated by letters A through H.

10. Ineffective assistance of appellate counsel for failing to ascertain the accuracy of the trial record prior to executing an appeal.

(Doc. No. 136 at 4, purporting to quote Doc. Nos. 96 & 101.)

11. Movant was constructively denied counsel during critical stages at trial, thus, presumption of prejudice applies.

12. Trial court erred in failing to conduct, *sua sponte*, [inquiry] into client/counsel irreconcilable conflict of interest, structural error, presumption of prejudice applies.

13. Trial court erred in failing to conduct hearing *sua sponte* to ensure movant made knowing and voluntary waiver of counsel, prior to premitting [sic] movant to proceed *pro se* during critical stages of trial, structural error, presumption of prejudice applies.

14. Amended factual basis to affidavit which is attached to memorandum in support of § 2255 Motion (Civil C-1-05-207)(Doc. No. 101).

15. Cumulative trial errors, and totality of circumstances, rose to level of prejudice to movant.

(Doc. No. 136 at 4-5, quoting Doc. No. 123.)

16. Whether trial counsel was ineffective by not moving for mistrial, due to the attorney/client conflict of interest, after court's denial of three previous motions for continuance, in violation of petitioner's due process right to a fair trial.

17. Whether trial counsel's failure in pretrial investigation of outrageous government misconduct rendered ineffectiveness in not negotiating conditional guilty pleas with government.

18. Whether violation of court reports [sic] act 28 U.S.C. § 753 resulted in (a violation to) petitioner's right to an adequate appeal.

(Doc. No. 136 at 5, purporting to quote Doc. No. 53)

19. Movant was constructively denied counsel during critical stages of trial, thus, a presumption of prejudice applies in the instant case.

20 . Trial court committed prejudicial, reversible error, when it

failed to ensure that movant made a knowing and voluntary waiver of counsel for proceeding pro se during critical stages of trial.

21.     Cumulative trial errors raised to level of prejudice.

(Doc. No. 136 at 5, quoting Doc. 127)  Finally, Defendant states he "wishes to amend to his affidavit attached to memorandum in support of § 2255 motion (Doc. No. 101) the entire motion to amend affidavit (Doc. No. 128)." (Doc. No. 136 at 5.)  Upon examination, Doc. No. 128 does not contain any new claims; the attachment to it is a copy of the second § 2255 Motion.

This Court originally found all of the claims in Mr. Solomon's original § 2255 Motion to be untimely.  The Court of Appeals did not disagree with the Court's statutory analysis, but held that the time should be equitably tolled for the additional sixty-three days between expiration of the one-year statute and the date of filing of the original § 2255 Motion.  *United States v. Solomon*, 467 F.3d 928, (6th Cir. 2006).  The Court of Appeals did not suggest that its holding of equitable tolling would extend beyond the date of actual filing of the original § 2255 Motion.  Prima facie, then, any requested amendments filed after the original § 2255 Motion are barred as untimely.

In claiming that the amendments are timely, Mr. Solomon relies on the relation back doctrine of Fed. R. Civ. P. 15(c)(2).  In 2005 the Supreme Court very significantly restricted application of Rule 15(c)(2) in the habeas corpus/§ 2255 context when it held that a claim in an amended petition does not relate back to the original date of filing under Fed. R. Civ. P.  15(c)(2) when it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading.  *Mayle v. Felix*, 545 U.S. 644, 125 S. Ct. 2562; 162 L. Ed. 2d 582 (2005).  The Court held that the relation back doctrine will only apply to newly-added claims which share a "common core of operative facts" with claims which have been timely made.  It interpreted the "conduct, occurrence, or transaction" language of Rule 15(c)(2) to refer to the facts giving rise to a particular habeas corpus claim, rather than to the trial and eventual conviction which are being

attacked in the habeas proceeding.  It expressly held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."

In Ground C of the original § 2255 Motion, Mr. Solomon alleged his attorney labored under a conflict of interest.  He now asserts that each claim of conflict of interest made in the requests for amendment (to wit, Grounds 1, 3, 4, 5, 8, 11, and 16) relate back to the time of the original Motion "because they rely upon the same core of operative facts, and clarify the prejudice prone [sic] in light of the Supreme Court's decisions in *Mickens" v. Taylor*, 535 U.S. 16 (2002) (Doc. No. 136).  The Magistrate Judge agrees that these claims relate back because they are essentially the same claim: Mr. McEvilley rendered ineffective assistance of counsel, amounting to a constructive denial of counsel, because he labored under what Mr. Solomon labels a conflict of interest.  Therefore all of these claims will be reviewed on the merits.

Mr. Solomon claims that Grounds 2 and 6 and a number of other Grounds dealt with in the preceding paragraph are reassertions of claims made in his original § 2255 Motion and the Magistrate Judge agrees.

In Ground 17, Mr. Solomon asserts his trial attorney was ineffective in failing to negotiate a conditional guilty plea with the government.  He asserts (Doc. No. 136 at 13) this claim relates back because it is part of his claim that his counsel was ineffective in pretrial investigation and plea negotiations.  However, this claim adds a new dimension, to wit, an assertion that a conditional guilty plea would have been possible if counsel had prepared and negotiated effectively.  A general claim of ineffectiveness in pretrial preparation does not encompass that assertion.  An attorney may render ineffective assistance in many ways prior to trial; a general assertion of ineffectiveness in that stage of the proceedings does not give the Government notice of what deficiency is actually being asserted and thus does not serve the purpose of the pleading rules.  (In any event, Mr. Solomon has presented

no proof that a conditional guilty plea would have been possible.) Ground 17 does not relate back and is therefore barred by the statute of limitations.

Petitioner admits (Doc. No. 136 at 13) that Ground 9 (denial of right to appeal by omissions in the record) is a new claim, but asserts it is timely under ¶ 4 of the statute of limitations. He notes that his appellate counsel, Mr. Aubin, was unaware of the omissions. Mr. Solomon says this claim was first made at Doc. No. 96, his second Motion to Vacate, which was filed March 31, 2005. He does not advise the Court when he finally received his trial transcript from Mr. Aubin, saying only that it was "after he had filed his original § 2255 motion" (Doc. No. 136 at 13). However, the second Motion to Vacate was filed almost eight years after the original Motion. He asserts that "the limitation period was tolled from the time he actually received his transcript up to the time the Court of Appeals decided that movant's original § 2255 motion was not untimely" *Id*. at 14. However, he presents no legal basis for that argument. Assuming that Ground 9 states a claim upon which habeas corpus relief could be granted, the statute would run from the date Petitioner discovered the underlying factual basis – the omission from the transcript – for one year. Since his direct appeal was decided on May 5, 1993, it is extremely likely that more than one year expired between the time he received the transcript and March 31, 2005, the date he filed his second § 2255 motion. Ground 9 is time barred.

In Ground 10 Defendant asserts his appellate counsel rendered ineffective assistance by failing to ascertain the accuracy of the trial record prior to briefing the appeal. This claim is time barred on the same basis as Ground 9.

In Ground 7, Defendant asserts he was denied his due process right to be present at each stage of his trial by being excluded from the sidebar conference at which he asserts his motion to dismiss for outrageous government conduct was discussed. He asserts this claim is timely because his assertion of it was impeded by the court reporter's failure to transcribe the sidebar conference. The

Magistrate Judge disagrees. Petitioner knew he had been excluded from the conference as soon as it happened. He admitted at the evidentiary hearing that he made no complaint at the time (Transcript, Doc. No. 174, at 123, ll. 14-16.). There is no transcript of the sidebar conference and he claims his time to make this claim does not begin to run until such a transcript is created. Petitioner confuses evidence in support of the merits of the claim with knowledge of the underlying fact that the asserted deprivation of rights occurred. Ground 11 does not relate back to any of the original claims and was untimely made when it was first pled in 2005.

In Grounds 15 and 21, Defendant asserts he suffered prejudice from "cumulative trial errors." By his admission (Doc. No. 136 at 15), Mr. Solomon did not assert cumulative error until the Motion to Amend (Doc. No. 123) filed April 3, 2007, or the Motion to Amend Issues and/or Factual Basis (Doc. No. 127), filed June 13, 2007. He claims these Grounds are timely, even though they appear new, because they rely "on the collective core facts underlying each of the claims raised in the § 2255 motions." (Doc. No. 136 at 16.) To the extent these claims rely only on the asserted constitutional deprivations pled in the original § 2255 Motion, the Court can properly consider on the merits, as it does below, whether cumulative error constitutes a basis for relief. However, these Grounds plainly are time-barred to the extent they rely on any other claims besides those made originally.

Petitioner makes no explanation why his claim under the Court Reporters Act (Ground 18) was timely made when it was asserted for the first time March 20, 2000 (Doc. No. 53). Ground 18 is time barred.

Ground 14 purports to amend the factual basis of Petitioner's claims. It does not set forth a ground for habeas corpus relief and is not separately considered on the merits below.

Grounds 12, 13, 19, and 20 are different ways of stating Petitioner's claims of ineffective assistance of counsel and therefore relate back to the original § 2255 Motion.

## Analysis of the Merits

### Trial Proceedings

This case came on for trial before District Judge Herman Weber on April 27, 1992 (Trial Transcript Vol. I, Doc. No. 25, at 1.)  Petitioner's trial attorney, R. Michael McEvilley, whose practice at the time was largely criminal defense and who had been admitted to practice since 1974, moved for a continuance because Petitioner wanted to look at some law books, apparently to evaluate independently of his counsel an offer of a plea agreement. *Id*. at 3.  McEvilley was embarrassed to make the request because he had been asked the prior week by the Judge's staff if a continuance would be sought and had said no. *Id*.  Judge Weber, noting that the Speedy Trial Act time had almost run out, that he had re-set a civil case to permit this case to go forward, that McEvilley was prepared to advise Petitioner on whether or not to accept the plea, and that jurors and witnesses had been summoned, denied the continuance. *Id*. at 6.  A jury was selected and heard one witness from the telephone company identify Mr. Solomon as the subscriber to a pager which was involved. *Id*. at 7-53.

At the beginning of the second day of trial, April 28, 1992, Mr. Solomon began to tender a plea of guilty and then decided not to do so (Trial Transcript Vol. II, at 56-65.)  Before the next witness was called, Mr. McEvilley indicated at sidebar that Petitioner "doesn't feel we discussed the case properly.  He would like a continuance and get another lawyer." *Id*. at 66.  Hamilton County Sheriff's Deputy Nicholas Coyle, a drug enforcement officer, testified he received a tip from informant Norman Watkins[4] about drug trafficking activity at the Fay Apartments in Cincinnati. *Id*. at 67-68.  Part of the information he received was Mr. Solomon's pager number. *Id*. at 69.  Coyle

---

[4]Sometimes referred to in the transcript as "Watson."

paged Solomon, causing him to call back to a number at the federal building in Cincinnati. *Id*. at 70.
When Solomon called, he and Watkins negotiated for Solomon to sell Watkins five ounces of crack
cocaine for $4,700. *Id*. at 72-73. Drug agents wanted to conduct the transaction outside the Fay
Apartments for safety reasons and Solomon was reluctant to bring more than three ounces to an
outside location. *Id*. at 74-77. Eventually the arrangement was made to have the transaction occur
at Watkins "old apartment townhouse" at the Fay Apartments. *Id*. at 78. Solomon arrived at 9:07
p.m., bringing three ounces of crack to sell at $2,800. *Id*. at 78-80. He had picked up Anthony
Powell along the way and Powell retrieved the drugs from the car. The telephone and in-person
conversations were tape recorded and those tapes were played for the jury. Coyle understood that
the apartment where the transaction took place, 2456 Nottingham, was leased to Norman Watson;
although Watson was moving out, he still had a key. *Id*. at 94-95.

At 11:10 on the second day of trial, the jury was excused for lunch and Judge Weber
proceeded with the continuance and substitution of counsel matter which had been raised earlier. He
noted that Solomon had represented during the aborted plea colloquy that he had sufficiently
discussed the case with McEvilley. Solomon represented to Judge Weber that his problem was a lack
of law books at the jail where he was being held. *Id*. at 113. Mr. Hunt put on the record the
discovery he had provided, including playing the tape recordings for Mr. Solomon. *Id*. at 115.
Eventually Mr. Solomon said he would retain the counsel he had, Mr. McEvilley. *Id*. at 117.

After the lunch recess, the jury heard from Cincinnati Police Officer Anthony Carter. He
described the drug transaction in which he purchased the crack cocaine from Solomon. *Id*. at 122-25.
Carter was also under the impression that 2456 Nottingham was leased to Watkins who was in the
process of vacating it. *Id*. at 133-35. He testified that Anthony Powell had retrieved the drugs from
Solomon's car and delivered them, at Solomon's direction, to Carter. *Id*. at 137.

After the lunch recess, the jury heard from Cincinnati Police Officer Anthony Carter. He
A forensic chemist testified that the material sold by Solomon was 84% crack cocaine and

16% benzocaine, a noncontrolled substance, and other substances. *Id*. at 152. Mr. Solomon decided not to testify. *Id*. at 169.

After both parties had rested, on the third morning of trial, Mr. Solomon asked for a continuance to get an expert witness who could testify that artificial drugs were commonly being sold on the street as a way of defrauding persons who would not know that they had bought fake drugs until they began to distribute them (Trial Transcript Vol. III at 185). Mr. Hunt responded that there was no evidence Mr. Solomon intended to sell fake drugs. *Id*. at 186. Mr. Solomon then argued that the confidential informant had not testified and that he needed to look at law books in order to understand things. *Id*. at 187. Judge Weber found that Mr. Solomon had known the confidential informant, by his own admission, about nine months and could have subpoenaed him. *Id*. at 188. He noted that the Sixth Circuit had held the sale even of baking soda when represented as cocaine would suffice for conviction and therefore the proposed expert testimony would be irrelevant. *Id*. As noted above, the jury returned a verdict of guilty and Mr. Solomon was sentenced to 240 months confinement.

## Ineffective Assistance of Counsel

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes

> both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct 2464, 91 L. Ed. 2d 144 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

As to the prejudice prong, the test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996), citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow,* 977 F.2d 222 (6th Cir. 1992). Defects in assistance that have no probable effect on the trial's outcome do not establish a constitutional violation. *Mickens v. Taylor,* 535 U.S. 162, 166 (2002). To show prejudice

the new evidence that a habeas petitioner presents must differ in a substantial way – in strength and subject matter – from the evidence actually presented. *Hill v. Mitchell*, 400 F.3d 308 (6th Cir. 2005)(contains long analysis of cases finding no prejudice).

Mr. Solomon argues in many places that he is entitled to a "presumption of prejudice" because Mr. McEvilley labored under a conflict of interest. Where a criminal defendant can prove that his attorney actively represented actual conflicting interests, ineffectiveness will be found and there is no need to show prejudice resulting from the conflict. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *Thomas v. Foltz*, 818 F.2d 476 (6th Cir. 1987). The burden of proof of actual conflict is on the Petitioner. *Cuyler*, supra. The conflict must be actual and significant. *Thomas,* 818 F.2d at 481. The presumed prejudice standard of *Cuyler* is clearly established only when the conflict is due to multiple concurrent representations. *Mickens v. Taylor*, 535 U.S. 16 (2002). There is absolutely no proof that Mr. McEvilley represented any other party in these proceedings. Thus Mr. Solomon must establish both deficient performance and resulting prejudice to prevail on his ineffective assistance of counsel claims.

As the Court understands Mr. Solomon's position after the evidentiary hearing, it is that his trial attorney, R. Michael McEvilley, was ineffective in several respects:

1.      He did not file a motion to suppress the seized evidence.

2.      He did not arrange for Defendant to hear the tapes prior to trial.

3.      He did not investigate who had the right to occupy 2456 Nottingham so as to file a motion to dismiss the indictment prior to trial for outrageous government conduct in "seizing" that address in which to conduct the drug transaction.

4.      He did not adequately prepare to present a defense that Solomon intended to sell fake drugs and not crack cocaine, nor adequately present the motion for continuance to obtain expert testimony on this subject or lay testimony from Otto Gooden.

5.    He did not prepare to present an entrapment defense.

6.    He did not adequately represent Defendant in plea negotiations.

It is correct that no motion to suppress was filed, but Mr. Solomon has failed to show any way in which this was deficient performance.  The trial record does not suggest any basis on which Defendant could plausibly have argued the evidence should be suppressed and Mr. Solomon did not add any suggested basis at the evidentiary hearing.

The trial record refutes the claim that Mr. Solomon did not hear the relevant audiotapes prior to trial; Mr. Hunt recited for the record that he had played the tapes for Messrs. Solomon and McEvilley and no one contradicted him.

Judge Weber noted in denying one of the continuance motions that proof that one can sell fake drugs to unsuspecting would-be drug dealers would have been irrelevant under Sixth Circuit precedent and Mr. Solomon has offered no contrary law.  Additionally, Mr. Hunt pointed out that there was no evidence Mr. Solomon intended to sell fake drugs.  He actually sold 84% pure crack cocaine and he himself did not testify that he thought he was selling fake drugs.  Mr. Gooden's testimony at the evidentiary hearing, even if presented at trial, would not likely have changed the result because Mr. Gooden did not know what it was Mr. Solomon was selling.  Even if the sale of fake drugs were somehow less penal than the sale of real drugs, a dealer cannot escape liability when he sells real drugs just because he told a neighbor on the way to the transaction that he was intending to sell fake drugs.  Mr. Solomon also fails to account for the fact that Mr. Gooden's testimony about what Mr. Solomon's intentions were on February 6, 1992, is completely inadmissible hearsay evidence and would have been excluded if Mr. Gooden had been called to testify.

The defense of entrapment is Congressionally created and requires proof that the defendant did not have a predisposition to commit the offense.  *United States v. Russell,* 411 U.S. 423, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973).  It is difficult to see how Mr. Solomon could possibly have prevailed

on an entrapment defense, given the evidence against him. He did not testify at the evidentiary hearing that he had no predisposition to be involved in the drug trade, and he admitted to having known the informant and having consumed drugs with him a number of times.

In some of his papers and obliquely during his testimony, Solomon suggested that he was coerced into the crime by Watkins' threats that if Solomon did not become involved, Watkins would tell Solomon's girlfriend that Solomon had been, when high, engaged in sex others, including homosexual acts. According to Solomon's theory, Watkins persuaded him to do the drug deal so that Watkins could leave town with his share of the money. Those facts, even if proven, would not establish an entrapment defense.

There is no "objective" entrapment defense based in the Due Process Clause which requires or even authorizes dismissal based on "outrageous" government conduct. The Sixth Circuit rejected this form of the entrapment defense in *United States v. Tucker*, 28 F.3d 1420 (6th Cir. 1994), citing *Russell, supra,* and *Hampton v. United States*, 425 U.S. 484, 489, 48 L. Ed. 2d 113, 96 S. Ct. 1646 (1976).

But even if there were such a defense, it is difficult to see any "outrageous" governmental misconduct in what happened here. The drug transaction was carried out in a townhouse apartment which Watkins was vacating or perhaps had already vacated. Watkins had a key to let the agents in. Other than that, neither the trial testimony nor the evidence produced as the evidentiary hearing suggests anyone's rights were violated by the government's use of 2456 Nottingham for this transaction. The government was under no obligation to prove at trial that they had consent from the record lessee or the owner of the property to be there because that is not an element of the offense.

In addition, of course, Judge Weber held that Solomon had no standing to complain about this conduct of the government. Solomon now asserts that holding was erroneous. He could have raised this claim on direct appeal, but did not do so, so it cannot be raised directly in this § 2255

proceeding[5].  But he also has not suggested any evidence his counsel could have presented or legal argument he could have made which would have had any chance of success.  Plainly it was not Solomon's apartment; he does not claim it was.  He does not state any basis on which he could claim a reasonable expectation of privacy there.  See *Katz v. United States,* 389 U.S. 347, 88 S., Ct. 507, 19 L. Ed. 2d 576 (1967).  He himself went there to engage in a drug transaction without any more right to be on the premises than the government agents.

Mr. Solomon's argument about Mr. McEvilley's deficiencies in plea negotiation are quite vague.  The trial record and the evidentiary hearing, taken together, indicate that even as of the morning of trial, Petitioner could have pled to a charge with a six-year sentence if willing to cooperate with the government or a ten-year sentence without cooperation.  He declined those offers, but the only reason shown of record was that he wanted to look at some law books.  He does not now suggest how Mr. McEvilley's representation was deficient or what better sentence he could have received.  The evidence presented at trial proved conclusively that he sold over 75 grams of crack cocaine to a government agent for which the mandatory minimum penalty, given his prior record, was twenty years imprisonment.  It would appear on the face of things that a ten year sentence would have been a good deal in the face of the evidence.  Mr. Solomon was himself an eyewitness to all of the transactions on which the government relied, so he knew what the underlying facts were as soon as he was arrested.

In sum, Mr. Solomon has not shown any deficient performance on Mr. McEvilley's part or

---

[5]A motion to vacate under §2255 is not a substitute for direct appeal.  *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973).  Absent manifest injustice or special circumstances such as a change in the law, §2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 5th, §41.7(e)(2005), *citing, Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*,* citing *Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,*  11 F.3d 583  (6th Cir. 1993).

any prejudice which flows from any act or omission which he asserts is deficient performance.

Once it is clear that there was no ineffective assistance of counsel, the remaining claims collapse. That is, because Mr. McEvilley was providing effective representation, there was no cause for the prosecutor to move for a mistrial or Judge Weber to declare one *sua sponte*. Mr. Solomon never proceeded at trial *pro se*, so there is no question about whether he voluntarily and competently waived counsel, nor was he "denied" counsel at any point. He did speak on his own behalf several times after Judge Weber asked him if there was anything he wanted to add to what his attorney had said on his behalf, but this does not amount to proceeding *pro se* or being denied counsel. He was denied several continuances to obtain new counsel, but he has made no showing of what new counsel could have done that Mr. McEvilley did not do.[6]

Mr. Solomon also claims he received ineffective assistance of appellate counsel. The same *Strickland* standard applies to evaluating appellate counsel's performance. Mr. Solomon's claim is that Mr. Aubin was ineffective for failure to ensure the trial transcript was complete, but the omitted matter – the mid-trial motion to dismiss for outrageous government conduct – would have been completely unavailing if it had been raised because (1) the Sixth Circuit does not recognize that defense, (2) the Government's conduct was in no way outrageous, and (3) Judge Weber's standing ruling was correct. Since it is very unlikely the appeal would have turned out differently if Mr. Aubin had had the transcript supplemented to reflect the motion to dismiss, it was not ineffective assistance to fail to raise the matter.

## Conclusion

---

[6]Additionally, of course, the denial of a continuance was a claimed error on direct appeal which was rejected by the Court of Appeals.

All of Petitioner's claims are either time-barred or without merit. The § 2255 Motion should therefore be dismissed with prejudice.


April 26, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).