**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Christopher L. Solomon,          )
                                 )
          Petitioner,            ) Case Nos. 1:92-CR-15
                                 )           1:05-CR-207
     vs.                         )           1:97-CV-609
                                 )
United States of America,        )
                                 )
          Respondent.            )

                    O R D E R

          This matter is before the Court on Petitioner

Christopher L. Solomon's motion to vacate, set aside or correct

sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 34), Magistrate

Judge Merz's Report and Recommendation of April 28, 2008 (Doc.

No. 175) finding that Petitioner's claims are either time-barred

or without merit, and, therefore, recommending that Petitioner's

motion be dismissed with prejudice, and Petitioner's objections

to the Report and Recommendation (Doc. No. 179).  For the reasons

that follow, Petitioner's objections are not well-taken and are

**OVERRULED**; the Court **ADOPTS** Magistrate Judge Merz's Report and

Recommendation; Petitioner's motion to vacate, set aside or

correct sentence is not well-taken and is **DENIED;** Petitioner's

motion is **DISMISSED WITH PREJUDICE.**

                    I. Background

Petitioner Christopher L. Soloman is currently a federal prisoner serving a mandatory minimum sentence of 240 months of imprisonment after the jury returned a verdict of guilty on a one count indictment charging him with possession with intent to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A). The case was tried before the Honorable Herman J. Weber of this district from April 27, 1992 to April 29, 1992.

The evidence presented by the government at trial showed that on February 6, 1992, a confidential informant named Norman Watkins, who was working on behalf of the Drug Enforcement Agency ("DEA"), paged Petitioner in order to arrange a purchase of five ounces of cocaine base, or crack. Several pages and calls were exchanged between Petitioner and Watkins, during which they negotiated where the transaction would take place. The case agents wanted the transaction to take place outside of the Fay Apartments in Cincinnati for safety reasons; Petitioner wanted the transaction to take place inside of the Fay Apartments. Eventually Petitioner and Watkins agreed that the deal would be consummated at Watkins's townhouse at the Fay Apartments but that Petitioner would only sell Watkins three ounces of crack. Watkins was in the process of vacating the townhouse at the time but still had a key to the premises.

Petitioner arrived at Watkins's townhouse later that evening with a man named Anthony Powell. Petitioner and Powell were met there by Watkins and Agent Anthony Carter, who was in an undercover capacity posing as the buyer. Agent Carter was wearing a recording device that also transmitted conversations to other agents who were waiting in an upstairs bedroom to make the arrest. Petitioner and Carter agreed on a price and amount and then Petitioner ordered Powell to go out to their car to retrieve the drugs. After confirming the weight of the drugs, Carter gave a prearranged signal for the surveillance team to arrest Petitioner and Powell. At trial, a DEA chemist testified that the drugs sold by Petitioner to Carter weighed 73.4 grams and consisted of 84% cocaine base and 16% benzocaine, other residues, and moisture.

On the first day of trial, before jury selection, Petitioner's trial counsel requested a continuance so that Petitioner could study some law books in order to decide whether to accept a plea agreement tendered by the government. Petitioner's counsel stated that he had spoken with Petitioner several times about whether to accept the government's plea offer and informed Judge Weber that Petitioner had stated to him that he was not prepared to accept the plea agreement until he had an opportunity to study some law books. Judge Weber denied Petitioner's request for a continuance, however, because of

concerns regarding the Speedy Trial Act and because the request was not timely.

On the second day of trial, Petitioner indicated that he wanted to plead guilty to the count charged in the indictment. Judge Weber proceeded with the Rule 11 colloquy to ensure that Petitioner was making a knowing and intelligent waiver of his rights before accepting the guilty plea. Near the end of the colloquy, however, Petitioner stated that he no longer wanted to plead guilty and that he wanted to withdraw his offer to plead guilty. Judge Weber then allowed Petitioner to withdraw his guilty plea and the trial resumed. As indicated, the jury subsequently found Petitioner guilty on the indictment.

Finally, as is relevant here, Petitioner has claimed throughout these § 2255 proceedings that during the trial there was a sidebar conference between Judge Weber, his trial counsel, and the Assistant United States Attorney that is not recorded in the trial transcript. Petitioner alleges that during this sidebar conference, his trial counsel moved to dismiss the indictment on the grounds that government agents "illegally seized the residence of a third party, for the sole purpose of performing a sting operation to arrest petitioner." Petitioner alleges that Judge Weber denied the motion to dismiss the indictment on the grounds that he did not have standing to challenge the government's use of a third-party's residence.

Judge Weber has ruled on a number of occasions that the trial transcript is accurate and complete and has denied Petitioner's motions to amend the record. <u>See</u> Doc. Nos. 76, 104, 105, 110.

Petitioner's conviction and sentence were affirmed on direct appeal. <u>United States v. Solomon</u>, No. 92-3892, 1993 WL 147569, (6th Cir. May 05, 1993). Petitioner initiated post-conviction relief proceedings pursuant to 28 U.S.C. § 2255 on June 26, 1997. From this point forward, the procedural history of this case is convoluted to say the least and in his Report and Recommendation Magistrate Judge Merz has done an admirable job of reciting it in detail. Therefore, it is sufficient to simply incorporate Judge Merz's summarization of the claims now pending for resolution:

1. Violation of Defendant's Sixth Amendment right to counsel due to conflict of interest.

2. Trial court committed reversible error in finding Petitioner lacked standing to challenge the government's uses [sic] of the third party's residence to perform sting operation under the due process clause for outrageous government conduct.

3. Ineffective assistance of counsel during pretrial plea negotiation.

4. Ineffective assistance of counsel in failing to properly develop and adequately present an entrapment defense during trial.

5. Petitioner's Sixth Amendment right [to] effective assistance of counsel and Fifth Amendment right to a fair trial was [sic] violated when trial court failed to declare a mistrial <u>sua sponte</u> when it reasonably knew petitioner was receiving ineffective assistance of counsel during trial.

5

6. Violation of petitioner's right to effective assistance of counsel and a fair trial, due to prosecutorial misconduct, for failure to move court for a mistrial on its own initiative, when the government reasonably knew that petitioner was receiving ineffective assistance of counsel during trial.

7. Petitioner was denied his due process right to be present at each stage of his criminal proceeding, when he was excluded from side-bar conference.

8. Petitioner was constructively denied counsel during motion for witness.

9. Petitioner's due process right to perfect an appeal was violated due to omissions in trial record, in violation of 28 U.S.C. § 753(b) and Fed. R. Crim. P. 12(f).

10. Ineffective assistance of appellate counsel for failing to ascertain the accuracy of the trial record prior to executing an appeal.

11. Movant was constructively denied counsel during critical stages at trial, thus, presumption of prejudice applies.

12. Trial court erred in failing to conduct, <u>sua sponte</u>, [inquiry] into client/counsel irreconcilable conflict of interest, structural error, presumption of prejudice applies.

13. Trial court erred in failing to conduct hearing <u>sua sponte</u> to ensure movant made knowing and voluntary waiver of counsel, prior to premitting [sic] movant to proceed pro se during critical stages of trial, structural error, presumption of prejudice applies.

14. Amended factual basis to affidavit which is attached to memorandum in support of § 2255 Motion.

15. Cumulative trial errors, and totality of circumstances, rose to level of prejudice to movant.

16. Whether trial counsel was ineffective by not moving for mistrial, due to the attorney/client conflict

of interest, after court's denial of three previous
motions for continuance, in violation of
petitioner's due process right to a fair trial.

17. Whether trial counsel's failure in pretrial
    investigation of outrageous government misconduct
    rendered ineffectiveness in not negotiating
    conditional guilty pleas with government.

18. Whether violation of court reports [sic] act 28
    U.S.C. § 753 resulted in (a violation to)
    petitioner's right to an adequate appeal.

19. Movant was constructively denied counsel during
    critical stages of trial, thus, a presumption of
    prejudice applies in the instant case.

20. Trial court committed prejudicial, reversible
    error, when it failed to ensure that movant made a
    knowing and voluntary waiver of counsel for
    proceeding pro se during critical stages
    of trial.

21. Cumulative trial errors raised to level of
    prejudice.

Doc. No. 175, at 8-9 (quoting Petitioner's pleadings verbatim).

Magistrate Judge Merz found that Claims 7, 9, 10, 15,
17, 18 and 21 are barred by the statute of limitations because
they do not relate back to Petitioner's original claims. Judge
Merz concluded that Claim 14 does not set forth any ground for
habeas corpus relief and, consequently, did not consider it on
the merits. Then, after summarizing the trial proceedings, Judge
Merz analyzed the remaining claims, as set forth in Claims 1, 2,
3, 4, 5, 6, 8, 11, 12, 13, 16, and 20, on the merits under the
ineffective assistance of counsel standard set forth in
Strickland v. Washington, 466 U.S. 668 (1984). In light of the

evidentiary hearing, Judge Merz further refined Petitioner's

ineffective assistance of trial counsel claims to the following

contentions:

1. trial counsel failed to file a motion to suppress;

2. trial counsel failed to arrange for Petitioner to listen to
   the audio tapes prior to trial;

3. trial counsel failed to investigate who had a right to occupy
   the premises at the Fay Apartments in order to file a motion
   to dismiss the indictment based on outrageous government
   conduct;

4. trial counsel failed to present a defense that Petitioner
   intended to sell fake drugs and failed to obtain a continuance
   in order to obtain and present expert or lay witness testimony
   on that issue;

5. trial counsel failed to present an entrapment defense; and

6. trial counsel inadequately represented Petitioner during plea
   negotiations.

Judge Merz found these claims to be without merit.

Noting that the record failed to suggest any basis upon which

Petitioner could have argued that evidence should be suppressed,

Judge Merz found that counsel was not ineffective for failing to

file a motion to suppress.  Similarly, Judge Merz found that the

record plainly refuted Petitioner's claim that he did not listen

to the audio tapes before trial.  Judge Merz found that there was

no evidence that Petitioner intended to sell fake drugs.

Regarding the entrapment defense, Judge Merz found that it was

unlikely that Petitioner would have prevailed on this defense

based on the evidence against him and in light of Petitioner's

admission at the evidentiary hearing that he knew the confidential informant and had used drugs with him in the past. To the extent that Petitioner's entrapment defense also encompassed a claim of coercion, Judge Merz found that the alleged threats made by Watkins would not have established an entrapment defense. Judge Merz then found that Petitioner's claim that the indictment could have been dismissed based on alleged outrageous government conduct was foreclosed by <u>United States v. Tucker</u>, 28 F.3d 1420 (6th Cir. 1994). In any event, Judge Merz concluded, this claimed failed because the government's conduct was not outrageous. Finally, Judge Merz found that Petitioner failed to demonstrate that trial counsel was ineffective during plea negotiations. Judge Merz observed that Petitioner rejected a plea offer which would have resulted in a six year sentence if he cooperated with the government, or ten years if he did not cooperate, for no other reason than he wanted to look at some law books. In light of Petitioner's prior record and the mandatory minimum sentence of twenty years he was facing by proceeding to trial, Judge Merz believed that a plea resulting in a ten year term of imprisonment was a good deal.

In sum, Judge Merz concluded that Petitioner failed to demonstrate any way in which trial counsel was ineffective. Judge Merz also concluded that Petitioner's appellate counsel was not ineffective because, as already noted, the Sixth Circuit does

not recognize an entrapment defense based on outrageous government conduct. Therefore, Judge Merz recommended that Petitioner's § 2255 motion be dismissed with prejudice.

Petitioner now objects to Magistrate Judge Merz's Report and Recommendation.

## II. <u>Standard of Review</u>

To warrant relief under 28 U.S.C. § 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. <u>Humphress v. United States</u>, 398 F.3d 855, 858 (6th Cir. 2005). Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." <u>Davis v. United States</u>, 417 U.S. 333, 346 (1974). Claims of ineffective assistance of counsel are appropriately brought by filing a motion under § 2255. <u>United States v. Galloway</u>, 316 F.3d 624, 634 (6th Cir. 2003).

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish two elements: 1) counsel's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

The Court reviews <u>de novo</u> a magistrate judge's report and recommendation on a dispositive issue such as Petitioner's § 2255 motion. Fed. R. Civ. P. 72(b).

### III. <u>Analysis</u>

Petitioner first objects that Judge Merz denied his motion to subpoena Judge Weber and Court Reporter Julie Wolfer to testify at the evidentiary hearing about the sidebar conference he alleges occurred at his trial but was not transcribed. As the Court indicated earlier, Judge Weber has denied a number of motions filed by Petitioner to correct the record to include this sidebar conference. Therefore, it is the law of the case that no such sidebar conference took place. In any event, even if the sidebar conference did take place, as Petitioner contends, he was not prejudiced by its omission from the record. Petitioner asserts that during this alleged sidebar conference, his trial attorney moved to dismiss the indictment on the grounds that the government illegally seized the residence of a third party to conduct a sting operation. As Magistrate Judge Merz correctly stated, the Sixth Circuit does not recognize a defense to criminal charges based on a due process violation grounded in alleged outrageous conduct by the government. <u>United States v. Tucker</u>, 28 F.3d 1420, 1422-25 (6th Cir. 1994). Therefore, this

defense was not available to Petitioner as a matter of law and, consequently, even if the side bar conference actually occurred as he contends, he would not be entitled to relief under § 2255. Accordingly, Judge Merz did not err in denying Petitioner's motion to subpoena Judge Weber and Ms. Wolfer to testify at the evidentiary hearing.  It further logically follows, therefore, that his trial counsel was not constitutionally ineffective for not investigating this line of defense as Petitioner contends. If also follows logically that Petitioner's appellate counsel was not constitutionally ineffective for failing to raise this issue on direct appeal to the Sixth Circuit.

Petitioner next objects to Magistrate Judge Merz's conclusion that his claim concerning trial counsel's alleged failure to negotiate a conditional guilty plea is untimely. Petitioner contends that it relates back to his core claim concerning counsel's alleged failure to challenge the use of the apartment to conduct the "sting operation," counsel's failure to advance the defense that he intended to sell counterfeit drugs, and counsel's failure to move to dismiss the indictment based on alleged outrageous conduct by the government.  Even if these claims were filed timely because they relate back, as Petitioner asserts, they utterly fail on the merits.

The Sixth Amendment right to effective assistance of counsel applies of course during plea negotiations with the

government.  Moss v. United States, 323 F.3d 445, 474 (6th Cir.

2003).  A prisoner alleging that his trial counsel failed to

pursue plea negotiations must demonstrate deficient performance

on the part of counsel and that there is a reasonable probability

that he would have pleaded guilty but for counsel's advice.  Id.

at 468.  Additionally, the petitioner must demonstrate that the

government was willing to accept or extend an invitation to plea

negotiations.  Id.  In this case, Petitioner has made no showing

whatever that the government in fact was willing to extend a

conditional plea agreement so that he could pursue these

frivolous grounds to set aside his conviction on appeal.  In that

regard, as already stated, Petitioner was not entitled to assert

a defense based on outrageous government conduct.  Moreover, as

Judge Weber indicated at trial, Petitioner had no legitimate

expectation of privacy in the apartment where the transaction

took place, and thus had no basis upon which to file a motion to

suppress evidence from the transaction, because he had no

ownership or control over the premises.  United States. v. McRae

156 F.3d 708, 711 (6th Cir. 1998)("[I]mportant factors to be

considered in determining whether there was a legitimate

expectation of privacy include ownership, lawful possession, or

lawful control of the premises searched.").  More to the point,

an individual whose sole purpose for being on the premises is to

engage in drug-related business, as Petitioner was in this case,

13

has no legitimate expectation of privacy in the premises. <u>United States v. Harris</u>, 255 F.3d 288, 294-95 (6th Cir. 2001).

Finally, Petitioner would have had no basis upon which to enter a conditional plea based on his theory that he intended to sell counterfeit drugs to the agent. Entry of conditional plea first requires the denial of some pretrial motion by the court. Fed. R. Crim. P. 11(a)(2). Petitioner's alleged lack of intent to commit the offense charged by the indictment would have been subject to the government's proof at trial and, therefore, would not have been the basis for any appropriate pretrial motion. <u>See</u>, <u>e.g.</u>, <u>United States v. Todd</u>, 446 F.3d 1062, 1068 (10th Cir. 2006) ("[T]he district court dismissed the indictment because there was insufficient factual support for the charge. That was not the proper inquiry. On a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense. For the most part, that question does not involve any examination of the evidence."). Moreover, had such a motion been permissible in the first place, the government's evidence was overwhelming that Petitioner intended to sell authentic crack cocaine. As stated, the DEA chemist testified that the substance bought by the undercover agent was 84% cocaine base. Petitioner's contention

that he intended to sell counterfeit narcotics is refuted not only by the purity of the substance, but also by the evidence that Petitioner refused to sell the undercover agent as much crack as he wanted to buy. Had Petitioner truly intended to swindle the buyer, he would not have hesitated to sell him any amount he wanted in order to maximize his take from the transaction.

Thus, under all of the circumstances, Petitioner was not prejudiced by trial counsel's alleged failure to negotiate a conditional plea agreement so that he could pursue these issues on appeal.

Petitioner next objects to Magistrate Judge Merz's conclusion that his claims concerning the omissions from the trial record are untimely. Even if Judge Merz's conclusion was erroneous, Petitioner was not prejudiced by this ruling. As stated above, Petitioner was not entitled to any relief at trial or on appeal on the issues allegedly raised during the alleged sidebar conference. Similarly, Petitioner's contention that he was denied the right to be present at all stages of the trial when he was excluded from this sidebar conference is meritless even if it was timely. As already indicated, the law of the case is that this sidebar conference did not take place. Again, even if it did take place, no grounds were raised during the

conference which could have resulted in dismissal of the
indictment.

        Petitioner next contends that irreconcilable
differences between him and trial counsel over the objectives to
be pursued during trial deprived him of his right to counsel.
The record, however, shows no conflicts between Petitioner and
trial counsel which denied Petitioner his right to counsel.  On
the first day of trial, counsel moved for a continuance at
Petitioner's request so that he could study some law books.
Judge Weber denied the motion because it was not timely.  On the
second day of trial Petitioner informed the Judge Weber that he
wanted to enter a change of plea and plead guilty to the charge
in the indictment.  During the plea colloquy, Petitioner stated
under oath that he had discussed everything about the case with
trial counsel and that counsel had fully advised him of the
nature and meaning of the charge against him.  Before Judge Weber
could finish the plea colloquy, however, Petitioner had another
change of heart and decided not to plead guilty.  Later the same
day, trial counsel again asked Judge Weber for a continuance
because Petitioner had informed him that he wanted to get new
counsel because he had not discussed the case in sufficient
detail with trial counsel.  Judge Weber pointed out that
Petitioner had just sworn under oath that he had sufficiently
discussed the case with trial counsel, therefore, Judge Weber

said that he wanted some other evidence before granting

Petitioner's motion. Petitioner then stated that he wanted to

review some law books to ensure that he understood all of the

issues surrounding his case and that he had communicated his

thoughts about the case to counsel effectively. In other words,

Petitioner was concerned that, without independent research on

his part, he would omit telling counsel important facts about the

case. Judge Weber essentially viewed this request as a rehash of

Petitioner's first request for a continuance and denied the

motion. Petitioner then stated that he would retain current

trial counsel. See Doc. No. 110-17.

Petitioner never identified any conflicts,

irreconcilable or otherwise, between himself and trial counsel

and never expressed any dissatisfaction with counsel's

representation during the trial. There is certainly no evidence

of a complete breakdown in communication between Petitioner and

trial counsel. It was Petitioner's burden to bring any serious

dissatisfaction or conflicts with trial counsel to Judge Weber's

attention during the trial. Benetiz v. United States, 521 F.3d

625, 632 (6th Cir. 2008)(citing United States v. Iles, 906 F.2d

1122, 1131-32 (6th Cir. 1990)). He did not do so. Nevertheless,

Judge Weber inquired into the reasons that Petitioner wanted to

substitute counsel, and, in denying the motion, reasonably relied

on its marked untimeliness as well as the effect of a delay on

the administration of justice. <u>See</u> Doc. No. 25, at 5-6 (where
Judge Weber noted, in denying first motion for continuance, that
he had continued an important civil trial to try Petitioner's
case and that the venire panel had been called and was present);
<u>Benetiz</u>, 521 F.3d at 632. Accordingly, Petitioner's claim of
irreconcilable conflicts between he and trial counsel is without
merit.

Petitioner next objects to the Report and
Recommendation's conclusion that he was foreclosed from
presenting evidence of his intent to sell counterfeit drugs as a
defense to the indictment. The Court agrees with Petitioner that
it was the government's burden to prove that he subjectively
intended to sell actual cocaine base to meet its burden of proof.
<u>United States v. Pennell</u>, 737 F.2d 521, 525 (6th Cir. 1984) ("The
government must, of course, prove the defendant's subjective
intent to purchase (or sell) actual narcotics beyond a reasonable
doubt."). Nevertheless, as Magistrate Judge Merz accurately
stated, Petitioner has not adduced any evidence that he intended
to sell counterfeit drugs to the undercover agent. As noted, the
fact that Petitioner sold 84% pure cocaine base to the agent
completely undercuts his theory of defense. Petitioner claims
that he would have presented Otto Gooden as a witness on this
issue. At the evidentiary hearing, Gooden testified that earlier
on the day of February 6, 1992 he was with Petitioner when

18

Watkins, the confidential informant, approached Petitioner about obtaining some "funny dope" from Petitioner. Doc. No. 174, at 85. According to Gooden, Petitioner refused to deal with Watkins because Watkins had robbed someone. Id. at 85-86. Gooden's testimony does not help to establish Petitioner's lack of intent, though, because it only shows that Petitioner did not want to have any dealings with Watkins. Even if Petitioner later changed his mind about dealing with Watkins, Gooden's testimony does nothing to explain why, if Petitioner intended to sell fake drugs to the agent, he actually brought real crack to the deal. In short, even had Gooden testified to the same effect at trial, there is no reasonable probability that the outcome of the trial would have been different.

Tied into this theory of defense is Petitioner's contention that he was coerced or threatened into participating in the offense by Watkins. A defense based on duress or coercion, however, requires proof of a threat which induces a well-grounded apprehension of death or serious bodily injury. United States v. Johnson, 416 F.3d 464, 468 (6th Cir. 2005). As Magistrate Judge Merz correctly indicated in the Report and Recommendation, Petitioner has not adduced any evidence that he had been threatened with death or bodily injury when he committed this offense. Therefore, Petitioner could not have presented a defense based on coercion or duress.

Petitioner also objects to Magistrate Judge Merz's conclusion that he had no reasonable chance of success by presenting an entrapment defense. The Court agrees with Judge Merz. One of the elements of the entrapment defense the defendant must prove is lack of predisposition to engage in the criminal activity. United States v. Khalil, 279 F.3d 358, 364 (6th Cir. 2002). "Predisposition focuses upon whether the defendant was an 'unwary innocent' or instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." Id. at 365 (some internal quotation marks omitted). In assessing predisposition, the Sixth Circuit has identified a number of relevant factors:

> 1) the character or reputation of the defendant, including any prior criminal record;
>
> 2) whether the suggestion of the criminal activity was initially made by the government;
>
> 3) whether the defendant was engaged in the criminal activity for profit;
>
> 4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement or persuasion; and
>
> 5) the nature of the inducement or persuasion supplied by the government.

Id. The district judge may refuse to give an entrapment instruction where the evidence clearly and unequivocally shows that the defendant was predisposed. Id. This record shows that it is virtually certain that Judge Weber would have concluded

that Petitioner was predisposed to commit this crime as a matter of law, and therefore, would have refused to instruct the jury on entrapment even had counsel attempted to present this defense. Therefore, the outcome of the proceedings would not have been different.

In consideration of the predisposition factors, the Court notes that the sentencing hearing transcript shows that Petitioner's criminal history category was VI – the most serious category under the Sentencing Guidelines. Doc. No. 22, at 11. Additionally, the government filed an information pursuant to 21 U.S.C. § 851 to enhance Petitioner's sentence because at the time he had two prior felony drug abuse convictions. Doc. No. 5. This evidence would have tended to prove predisposition. <u>See United States v. Elder</u>, 90 F.3d 1110, 1135 (6th Cir. 1996) (government would have been entitled to introduce evidence of defendant's two prior drug-trafficking felonies to establish predisposition). Although the government suggested the criminal activity by paging Petitioner in the first instance, thereafter the record shows that Petitioner was a willing participant in the transaction. The only reluctance ever demonstrated by Petitioner concerned the location of the transaction and the amount of crack he was willing to sell. The record shows, however, that he never expressed any reluctance to engage in the transaction itself. Finally, the record shows that Petitioner engaged in the criminal

activity for a profit.  In short, the record clearly and
unequivocally establishes that Petitioner was predisposed to
commit this offense.  Therefore, it is highly unlikely that Judge
Weber would have instructed the jury on entrapment.  Therefore,
the outcome of the trial would not have been different had trial
counsel attempted to present an entrapment defense on
Petitioner's behalf.

Petitioner next objects to Magistrate Judge Merz's
conclusion that he defaulted his claim concerning his challenge
to the use of the apartment to conduct the sting operation by
failing to raise it on direct appeal.  However, even if this
claim is not defaulted, as previously discussed, he is not
entitled to relief on the merits of the claim.

Petitioner next objects to Magistrate Judge Merz's
rejection of his claim of ineffective assistance of counsel
during plea negotiations.  The objection again relates to
Petitioner's theory that he could have entered into a conditional
plea agreement while preserving his other challenges for appeal.
This argument is without merit for the reasons previously
discussed.  <u>See</u> <u>supra</u>, at 12-15.

Finally, Petitioner objects to Magistrate Judge Merz's
overall conclusion that trial counsel's performance was not
deficient.  This objection is essentially a re-hashing of each of
Petitioner's claims about omissions in the trial transcript, the

government's use of the apartment, presentation of an entrapment defense, and presentation of a defense of coercion or duress. This objection is without merit for the reasons already extensively discussed.

<u>Conclusion</u>

Magistrate Judge Merz accurately analyzed the record and relevant case law in concluding that Petitioner was not denied his Sixth Amendment right to effective assistance of counsel. Petitioner has advanced no legal theory or evidence upon which the Court can conclude that the outcome of this trial would have been different but for his trial counsel's alleged deficient performance. Therefore, Petitioner has failed to establish any constitutional violation of his right to counsel under the <u>Strickland</u> standard.

Accordingly, Petitioner's objections to the Report and Recommendation are not well-taken and are **OVERRULED.** The Court **ADOPTS** the Report and Recommendation.

**IT IS THEREFORE ORDERED:**

1.    Petitioner's motion to vacate, correct or set aside sentence (Doc. No. 34) is not well-taken and is **DENIED.** Petitioner's motion is **DISMISSED WITH PREJUDICE.**

2.    A certificate of appealability shall not issue on the matters raised herein. <u>See</u> 28 U.S.C.A. § 2253(c); Fed. R. App. P. 22 (b). Petitioner remains free to request issuance of the certificate of appealability from the Court of Appeals. <u>Id</u>.

3.    The Court certifies pursuant to 28 U.S.C.A. §
1915(a)(3) that an appeal of this order would not be taken in
good faith, and therefore **DENIES** Petitioner leave to appeal <u>in
forma pauperis</u>.   <u>See</u> Fed. R. App. P. 24(a); <u>Kincade v. Sparkman</u>,
117 F.3d 949, 952 (6th Cir. 1997).


Date<u> December 19, 2008 </u>        <u>        s/Sandra S. Beckwith        </u>
                              Sandra S. Beckwith, Chief Judge
                                United States District Court